And may it please the Court, Adam Hansen on behalf of Appellant Mary Kay Thomas. Mary Kay Thomas served as a middle school principal for over two decades. Her performance was consistently recognized as outstanding. In 2019, 2020, and 2021, after Thomas hung a flag display that included the pride flag, Thomas faced a concerted effort from certain community members and district leaders to oust her from her role. Other community members and leaders supported Thomas. What began in the halls of the school quickly moved into the public square. At each step, Thomas advocated on behalf of LGBTQ students, and at each step, Thomas was guided by her personal convictions, not just the four corners of her job description. After a year and a half of intense pressure, Thomas's employer bowed to her opponents, imposed a punishing demotion on Thomas. I want to take up three points today. First, whether Thomas's speech was unprotected because it was made pursuant to her official job duties under Garcetti. Second, briefly, the important factual and legal implications of the defendant's failure to raise a timely argument under Pickering. And third, causation, whether a reasonable jury could find that Thomas's demotion was motivated in part or in whole by her speech. Starting with the Garcetti question, and I want to bracket an important point of law. We obviously are arguing today that all elements of Thomas's speech were protected under Garcetti, but should this court disagree, there's a lot of elements of speech over roughly a year and a half long period, and the Supreme Court's decision in Connick shows that you need to look at each element of speech individually. So it's possible for this court, as the district court did, to reach a mixed conclusion. That would result in having to analyze causation based on whatever content, whatever bucket of protected speech the court finds. Start with Ms. Thomas's speech in the school. Hang the flags. If much of the speech is not protected, then we get into additional causation issues. Well, if you start from the premise that some speech is protected and some speech is unprotected, then the question becomes whether a reasonable jury could find that the protected speech was a cause, a but-for cause, under the Supreme Court's Bostock test. And the answer to that question is yes. I intended to take that up last. But the district court answered no. The district court answered no, and, you know, we just don't think there's support for that conclusion. And I'm happy Judge Loken to jump right there. There is, frankly, a cornucopia of evidence of causation here. The district court focused on two things. Number one, the time gap, and number two, this intervening investigation. The record is very clear that despite the time gap, which was partially caused by COVID, this was very much a controversy that never died down. You have a June 2020 board meeting. You have September 2020 creation of the Gay-Straight Alliance. You have more complaints in late 2020 by community opponents. You have the new superintendent coming in and suggesting resignation. You've got the February 2021 workplace complaint. Also in early 2021, the lawsuit by opponents. And then, frankly, the text messages and some of the evidence that we show showing excitement and gratitude on behalf of Thomas's opponents when she finally was demoted. This was always triggered by Thomas's speech from the first. And if you look at the district's justification, it's paper thin, right? There is pretext up and down this record. Twenty years of great performance, very thin reads, an investigation that failed to turn up any evidence of wrongdoing other than some very subjective findings about causing division. Of course, what caused the division? Her speech. So I'd like to move to the other issues. I'm happy to return to causation. But frankly, we think this is an easy case with respect to the causation question. Well, not her speech. I'm thinking that the school duty part of the speech is not protected. So what we have is the community support speech, which is somewhat distinct. I agree. They are distinct. And that was not always, you know, that was not the speech that was the ongoing, you know, conflict. Well, you know, I respectfully disagree. They have to be linked. They do. And, you know, in the eyes of the opponent, it's not just this person hung a flag I disagree with in late 2019. It is the advocacy on Ms. Thomas's part, communicating with community members, coordinating outreach to local and national advocacy groups, encouraging those groups to communicate directly with the district, which they did. And you, again, look at some of the statements in the record from some of the community opponents. It was about this coalition, this advocacy, and so forth. And so there is ample evidence in the record, even taking your premise at face value, Judge Loken, which obviously we don't agree with. But if all we have in play here is the community-oriented speech, there is plenty to What specifically, when you say community-oriented speech, what specific facts in the record should I look for? I'm adopting the district court's nomenclature, but here's what I would look at. So it's, number one, Ms. Thomas communicating with community members about her efforts to protect LGBT students. Number two, it's coordinating outreach to local and national advocacy groups. It's number three, it's encouraging those groups to communicate with the district, which What's the record show about what the school board knew about this sort of community-facing speech? There's a lot of circumstantial evidence about that point. You have, there's, I'm recalling an email that says quite a coalition, right? I mean, you have to recall there are lots of speakers, third parties coming in on all sides, right? So you have parents, you have staff, you have teachers. You've got these advocacy groups coming in at Ms. Thomas' behest in support of her and support of her work. And you get Well, I mean, obviously the school board knew that they were, that these advocacy groups were arriving or participating in the conversation, but did they know why? I think it's clear enough, and I think that, you know, and this is where we take issue with some of the points in my opposition's brief, right? It's certainly not a requirement that we have to show granularly, well, they knew about this private email or they knew about this text message. And I would direct the court to the Heffernan case, which we cite in our reply, right? I mean, that was a case about the employer was just completely wrong about what the speech was that the employee engaged in. And the Supreme Court said, well, that doesn't matter. It was motivated by what the employer thought the employee's speech was. And so here, I think given the totality of the speech and given the community reaction, I think there's enough for a jury to suggest that they knew that Thomas was a part of this movement in the community. Just the fact that those folks were responding in numbers on an issue that is one of the pressing issues of the day, and that always creates a great deal of controversy, would be sufficient to give the jury the right to draw a reasonable inference that Ms. Thomas was somehow the impetus of that? That's enough? Doesn't there need to be some fact that was known to the decision-makers? I'm trying not to quarrel with the premise of the question. I mean, I think if it's simply third parties making their voices heard, that perhaps would not be enough. But I think context is what matters crucially here, Judge Erickson, right? This was a very ongoing debate within this community for a year and a half. And everybody knew who was on what side of the debate. And everybody, I think, understood that this wasn't just organic support coming out of left field from these organizations. So anyone in the community that had an adverse employment action for the position they took on this dispute has a First Amendment claim? I don't think that's true. I mean, first of all, we need to stay within the realm of public employment, not private employment. And, you know, I think... It's a pretty broad realm. Well, you have to, I mean, you need some sort of punishment. I mean, it's relevant, Judge Loken, that no one else was punished for this, right? We don't have other random staff members or community members who may or may not work at the public utility who were punished for this. And so, you know, any First Amendment litigant has to make out the elements of their claims. Are you saying that, I mean, Ms. Thomas, everyone knew that her flag, displaying the flag is kind of what set off this public discussion, and therefore that's sufficient in and of itself, that the school board knew that the whole debate that occurred was as a result of the flag, and they knew who put the flag up? Is that enough? Well, we think it is enough because we think her in-school speech is protected. But I think what goes above and beyond that, goes above and beyond the facts that the question asks, right, that we already covered. And so that would add to that hypothetical with speech that's out in the community. I want to touch on briefly the Pickering point, and I think this is important for two reasons. So first, you know, no Pickering argument was timely made in this case, and that has very important factual and legal implications. Pickering has a way of forcing a little bit of . . . I didn't hear what you said was important. The failure to raise a Pickering argument in this case. And I think that has two important implications. Pickering has a way of forcing a degree of intellectual honesty in these public employment speech cases because it forces the employer to say, yes, of course, this speech was part  What's your best case on failure to preserve on a Pickering issue? Well, Pickering just simply wasn't mentioned in the district court. So, I mean, we cite all the . . . in our reply brief, we cite whatever the latest case we could find from this court that . . . And now you're saying because it wasn't . . . nobody talked about it, it's not preserved? That's our . . . What's your best case for that? Any . . . On a Pickering issue. I mean, this is a very unusual argument. It's not before this court because it was not raised until the reply brief in front of this court. And I think with respect to preservation, I mean, this court has said in decisions that summer judgment is the put-up or shut-up point of the litigation. So that would have been the time to raise it. So you want to remand and then it gets raised? Our position would be that that ship has sailed. Now the court could disagree with me on that. That's why I asked you for your best case. This is an extraordinary argument which requires us to leap three steps and then you win. Let me make sure I make the more modest argument first, which is Pickering is not before this court today. All right. Now if the court disagrees and says, well, you get essentially a second bite at the apple at summer judgment . . . We would know from many years of dealing with these First Amendment cases with public employees that Pickering is always in play. You're not asking us to grant summary judgment for Ms. Thomas, are you? We are not. We're asking for the case to be remanded for trial. Right. And so Pickering will come in play. We may just have to respectfully disagree on that point. And we ought to say now it's not failure to preserve because it hasn't come up because it wasn't relevant before. Sure. Well, I mean, the last point I'd make on that, and I do want to make my two substantive Pickering points, is Pickering is, it's typically a question of law for the court. And so if not raised at summary judgment, I'm not sure when the appropriate time would be. This isn't something that's typically put in front of the jury. But let me raise the two substantive points because I think they're important. The first is, is that Pickering forces an employer to say, of course, the speech was part of the cause. Of course. We just think and are justified in thinking that the disruption caused by that speech is sufficient for us to take the action that we wanted to take. And here, factually, by not raising that argument, in fact, the opposite is in the record. There are suggestions that the school board has said, look, there was no disruption. There was no disruption here. We are putting all of our eggs in the basket, that these very thin reads, these very, you know, these, these pretextual complaints, all these other things that don't pass the smell test. These are the real reasons for the termination. And that goes back to the essential causation point, which is what the school board, by virtue of that litigation choice, is asking this court to say, is that nobody could think that Thomas's protected speech had anything to do with her getting put in a broom closet, with her having to suffer this humiliating demotion, with all of the pretext, with all of the celebration from her opponents when she was put out of work. And that's a very, very tough road, tough road to hoe. I think I'll preserve the rest of my time for rebuttal, unless the court has further questions. Thank you so much.  Mr. Sullivan? He's tall. Good morning, Your Honors. May it please the Court. My name is Tim Sullivan. I'm here this morning on behalf of the Appellees in this matter. While this case previously involved numerous statutory claims, this appeal is limited to a First Amendment retaliation case. The nature of the claims being argued before this Court are different than the nature of what was argued before the District Court below. They didn't put all of their eggs in the First Amendment basket. But how is that? I don't understand the relevance of that to what's been briefed and now argued. No, I'm just pointing out, Your Honor, that at this point, the focus is on . . . I read the District Court's opinion. The focus is on the application of the First Amendment to these claims. And courts have long recognized that for practical reasons, the First Amendment rights of public employees are limited, particularly within the workplace. What about the comments here that were in the speech that allegedly occurred outside the workplace? I mean, as Judge Loken, that's a different question, right? And I would agree that that would be a different question. But as far as speech occurring outside of the workplace, there is nothing in the record that indicates that that was the speech that was even aware of by any of the decision makers in this case. You know, through discovery, they produced text messages that were between . . . Or they would have to know. I don't know that they would have to know, Your Honor. Like, I've not . . . There's common sense. I mean, we're talking about whether they get to present the case to the jury. With everybody knowing everything about this dispute in town, and a flood of supporting communications come in . . . But I think that that's where the point is, that what the communications were pertaining to was to a display within a public school that was government speech, that was speech by a public employee in and pursuant to their official duties. That's not the community activity private speech. He's out in private saying, would you please support my position . . . There's no evidence . . . Assuming that it's a government duty position. So there's no evidence in the record . . . Assuming that the speech in the schools, related to the schools, putting up the flag and coordinating or supporting student groups and so forth, if all that's part of her government duties, when she goes out in the community saying, I'm trying to do this good thing for my students, and I'm getting flack from my unreasonable colleagues, and I need some help. That's private speech, isn't it? I think that an argument could be made that that is still speech pursuant to your public duties. Well, give me a case that would support that argument. Well, one . . . Of course an argument can be made. One case that would be interesting to consider that would be the Lyons case, which was a . . . I think I wrote it. . . . qualified immunity case. And in that case, there was both public speech and private speech. And what the Court determined is that if a decision maker could reasonably, you know, conclude that the speech that was related to the public speech was private speech, then it's still not clearly established that what they were engaging in. This isn't qualified immunity. This is whether this claim goes to a jury, at least until there's a qualified immunity defense asserted and upheld. So, and to that point, you know, there was this initial discussion about preservation of arguments and things like that. And, you know, I'm not asking to change the decision below. I'm asking the Court to affirm the decision below. And it's well established that this Court can affirm a decision for any basis that is supported. It is only the employee who is looking or the party that is looking to reverse the decision that is limited to what has been raised below. And to that point, I think that the nature of how the First Amendment claim was litigated below is relevant to the initial question that you had about the relevance of the change of the nature of this case. This was not a First Amendment case. When they presented their First Amendment case below, they focused on the workplace speech. It's only now on appeal that they're trying to impossibly expand it, look through the six volumes of the record that we've put here, try to find more things that aren't related to the workplace. And when you go through the- So when I read all the pleadings in the district court record, I won't see any reference to what is now being described as private speech as being what they want protected? When you read the record, what you will not find is the speech being portrayed as it's being portrayed. Okay, we are talking about- We have- You know, lawyers do that all the time on appeal, and sometimes it works and sometimes it doesn't. But don't tell us that this is a shocking about face. We have a matter that members of the public are communicating to their elected officials about. They are writing letters both in support of and in opposition to an inclusivity project in a public school. The appellant's role in that was, as the principal of the school, this is a project that is going to happen within the school. The action that was taken was, I'm going to direct my employees to use the company credit card to buy some flags. I'm going to direct a custodian to hang that up on the wall. That's not the community stuff. What I'm saying, Your Honor, is that within that scope, when the community started saying, why is there a pride flag on here? There was discussion amongst the community. There was also support. But Mary, the plaintiff, the appellant, was speaking within and pursuant to her duties as the principal when she is asking teachers who supported the project to speak out. Ironically, she- That's the public employee aspect of it. The public employee aspect of this cannot be minimized. It's not the private speech aspect that I think Judge Kobus and I are focusing on. So the private speech aspect is as minimal as it could be. When they're trying to portray these 13 different categories of speech, those categories of speech- That may be, but this isn't summary judgment appeal. It is a summary judgment appeal. And it's a summary judgment appeal on the basis- Is there enough to get to the jury on any of the claims? There is not enough to get to the jury because the- This is a subclaim, if you will. The district court properly determined that the speech was made pursuant to her duties under Garcetti and therefore wasn't protected. The judge further concluded that there is a lack of causation- With no separate focus on the outside speech? The focus on the outside speech was, you know, that would go to the causation. You know, what we're looking at here is they're trying to say, you know, under- But did the district court explicitly focus on, if I go back to the district court's order, is this issue of outside the workplace speech addressed? I don't remember. It is not expressly addressed, but what the district court focused on was the concession that was made during oral argument that a lot of the categories of speech are squarely within their duties as a principle. You know, they continued that it is within a principle's professional responsibility to curate- The district court, I mean, is your argument basically it doesn't matter because causation resolves the issue here, or- I think it's both. You know, causation is an essential element of the claim that they need to present evidence to overcome summary judgment at this point. And causation is but for. You know, the district court focused on a number of reasons why causation was not established. It was an intervening investigation and complaint that was raised by staff members. There was no temporal proximity from, you know, they're trying to make this one year and a half long instance of speech, but you cannot separate out the fact that the school board had meetings to discuss the display in its building. The school board took a formal action to ratify that this is a middle school inclusivity display that constitutes government speech. We've received a lot of input on this. We are not going to be adding anything to the display or taking anything away from the display. You know, what seems to be missing from the argument on the other side is the recognition that the First Amendment doesn't take sides on an issue. If an employee has the right to advocate on one side of an issue, then an employee has the right to advocate on another side of an issue and a different one. You know, we- I think, and maybe I'm not understanding, but what I'm hearing is an argument that there's a subspecies of claims that relates to communications with people who were members of the public but who were neither parents nor employees and that those people are not part of the public's facing speech, but they're a subcategory of speech that is private and that you can't separate the discipline between the two categories, right? And so it seems to me there may be a couple of ways that you could approach that and I think one of them you've alluded to in passing when you said that, well, the decision makers were unaware, right? On the other hand, you know, Marshall's not exactly New York City, right? And what's going on is probably hard to keep secret under any set of circumstances. And the fact that outside organizations have become involved, people who are not parents have become involved, medical providers, as I recall, who were not personally involved, that all those people are reaching out and the question is, is that a sufficient set of circumstances that keeps at least that subcategory of First Amendment claims alive? Well, I would differentiate the facts of this case where what we have, you know, these outside communications, the private communications, whether that would be the text messages or the emails that are in the record, those text messages are with employees of the school district. They are with teachers of the middle school. We still have a principal who's communicating with employees of the school regarding a project that's present in the school. This is still pursuant to those duties. Is this argument the same when you look at communications with public interest groups that are regional and national in nature? There's nothing in the record that shows appellant reaching out to an advocacy group regarding anything related to this. The communications that they allude to are other people's speech. You know, this is the appellant trying to say other people did speech and it was related to what I did because I started the project. All of it comes down to clear government speech, clearly within the pursuant to their duties with as a high school principal. Therefore, saying anything that ripples out from that becomes protected speech because of the first thing. And I think the issue we run into that is when you have speech that is, you know, when you have mixed cases where you have both private and public speech, there is a question of what is reasonable for a decision maker to know, as established in the law, what is pursuant to the duties and what is not. You know, there are cases where it's difficult to draw the line between where the job duties and their conduct as a private citizen begins. You know, I don't believe this is one of those cases. This is not one of those cases where we have reporting of illegal activity. This is not one of those cases where there's safety issues. This is not a case where the appellant appeared at a school board meeting and addressed the school board based upon her personal opinions on this. This is a case that involves speech from a public employee that is directed to subordinate employees within the organization that relates to a inclusivity project that is part and parcel of their duties that was formally approved and adopted by the board. The amount of governmental control that was exercised over this project cannot be ignored. Nobody else was allowed to hang up additional flags. There was a separate lawsuit, the Marshall Concerned Citizens lawsuit, that sued the school district and the principal in their official capacity for viewpoint discrimination because they hung the pride flag but would not agree to hang up alternate flags, whether that be the straight pride flag or a Christian flag or the Gadsden, you know, don't tread on me flag. The fact that a government official is making choices about the content of the display is saying this is allowed, this is not allowed. The First Amendment doesn't allow, you know, if one person can hang up a flag, then another person can come and hang up another flag. The answer to free speech is counter speech, and this is not a situation where we have a private citizen coming into a middle school, directing the custodian to hang things up on the wall. Ironically, in the record, it shows that when the custodian was discussing their personal opinion about the flag, they were expressly told in writing by the appellant, there's no reason for you to be talking about this flag in school. It has nothing to do with your job duties. That is not a private citizen acting on a matter of public concern. That is a middle school principal saying that this is happening in the building because I am the public official that has engaged in this speech. And I no doubt that that's true, that there's a whole lot of just official speech that's taking place in capacity as the principal, right? But I'm hearing you to tell me that there is, if I search this record diligently, I will find nothing that Ms. Thomas said that was directed to anyone who was not either a public employee or someone with whom she had a duty to communicate with in her official capacity. Is that a true statement? If you look through the categories of speech that they claim, they're all protected. And it's noteworthy that despite their concession that many of the official speech is within their duties. Emails on the district email account to all staff that use the royal we, okay? The middle school is doing this. We are doing this. There are cases that say that's indicative that it's not personal. There are, you know, communicating directly and indirectly. When I can't find a single First Amendment case that protects indirect speech, particularly when you have a but-for causation that is related, you know, we need, this must be the but-for cause. So text messages with staff members that are private text messages that we weren't aware of, but once again, they're talking to staff members about reaching out to advocacy groups but not reaching out herself. And, you know, a person who's claiming that their speech was the but-for cause of retaliation has to establish that they engaged in the speech. There also is no, you know, inference that we were aware that she was engaging in this. You know, so as far as, you know, opposing efforts to remove the pride flag, once again, I see that my time is out. Any questions? Thank you. Four related points. I'm just going to meet the court right where it is, right where it's at, and focus on the causation related to the out-of-school speech. First, this was raised and adjudicated by the district court. The district court, of course, held or at least suggested in dicta, if it wasn't strictly necessary to its opinion, that the out-of-school speech was likely protected speech under Garcetti. Therefore, the district court's entire Give me a cite for that, if it's not in the opinion. Let me One second. All right, so this is at Appendix Volume 5, 1350 through 52, and I'm referring to the part of the opinion where the district court said Thomas may have been acting as a private citizen, and thus her speech may have been protected when Thomas built a coalition of community members to support LGBTQ students, then encouraged that coalition to contact the board in support of the pride flag. That's the exact language. You could call that dicta. I mean, ultimately Where in your summary judgment briefs did you pick up on that language and urge it as establishing That I don't have in front of me, but, you know, what we did Did you? Yes, we did. Yes, and I'm happy to In the brief or the reply? Well, I don't know how or in the oral argument. I don't have the answer to that question, so I don't want to hazard a yes. We're happy to file something with the court if the court wants us to do the spadework with that. But moving to the facts, immediately after, this goes to the no secrets in small towns principle, right? Immediately after the outreach from Thomas to these outside organizations, those organizations did what she asked and reached out to the board members. The board members were then very upset with Thomas. You have, for example, board member Swope saying, what in the world is this about to Thomas? You have Chapman, the chair of the board, accusing Thomas of opening up a can of worms. He was mad at Thomas, not because the jury wouldn't be compelled to say, to think he was mad at Thomas because these groups are simply speaking. He was mad at Thomas for causing them, encouraging them to speak and having it come back to the  He was mad at Thomas for taking up, quote, time and resources on lifestyles. And that brings me to my third point, which is limiting principles. Nothing in this case suggests that any time you have a public employee engaging in out of the workplace speech, that any downstream effects from that speech is going to give rise to a First Amendment claim. You need real evidence of causation, A to B to C. We have that here, but I do not prejudge future cases where it may be lacking. There is plenty to suggest that the decision makers knew what Thomas was doing and were motivated by that protected out of school speech. Last, I just want to make a brief suggestion on how this, assuming the court, I think, goes the way it's suggesting it will go on the Garcetti question, how this can be handled on a remand in the district court. And that's, in short, through carefully crafted jury instructions and special verdict form. So with this court's guidance, of course, Chief Judge Schultz would tell the jury, focus on this speech only. These other elements of speech, if the court says so, would be considered unprotected. And then you need to make a specific finding, jury, that those elements of speech satisfy the causation standard. And giving the jury clear direction will make sure that we get the right result here. Unless the court has further questions, I'd ask the court to reverse the district court's summary judgment and remand the case for further proceedings and trial. Thanks so much. Thank you, counsel. Complicated case. It's been very well briefed and argument's been helpful. We'll take it under advisement.